

**FILED**

May 22 2019, 9:01 am

**C L E R K**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Anne K. Ricchiuto
Jane Dall Wilson
Stephanie L. Boxell
Faegre Baker Daniels LLP
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
BOARD OF COMMISSIONERS OF
THE COUNTY OF FLOYD

Richard Fox
Kristi L. Fox
Fox Law Offices
New Albany, Indiana

Bart A. Karwath
Mark J. Crandley
Barnes & Thornburg LLP
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

City of New Albany,

*Appellant-Intervenor/Counterclaimant,*

v.

Board of Commissioners of the County of Floyd,

*Appellee-Plaintiff/Counterclaim Defendant,*

New Albany Floyd County Indiana Building Authority,

*Appellee-Defendant/Cross-Claim Defendant.*

May 22, 2019

Court of Appeals Case No.
18A-MI-1627

Appeal from the Floyd Superior Court

The Honorable Vicki Carmichael, Special Judge

Trial Court Cause No.
22D02-1804-MI-598

**Bradford, Judge.**

# Case Summary

[1] Between 1991 and 1992 the New Albany Floyd County Indiana Building Authority ("the Building Authority") issued bonds in order to finance a Criminal Justice Center ("the Center"). In 1992, Floyd County ("the County"), through its Board of Commissioners, entered into a fifteen-year lease ("the 1992 Lease") with the Building Authority, in which the County would lease the Center and the City of New Albany ("the City") would sublease from the County. In 2018, approximately ten years after the 1992 Lease ended, the County demanded that the Building Authority deed over the title of the Center pursuant to a provision in the 1992 Lease. After the Building Authority refused, the County filed suit seeking declaratory judgment and specific performance. The City intervened in the suit. Following a bench trial, the trial court entered judgment in favor of the County. The City contends that pursuant to Indiana Code chapter 36-9-13, the Building Authority lacked the authority to agree to such a provision that voluntarily divested itself of the Center's title. Because we agree that the Building Authority lacked the statutory authority to agree to such a provision but also conclude that the County can still exercise a purchase

option in the 1992 Lease, we reverse and remand to the trial court for further proceedings consistent with this opinion.[1]

# Facts and Procedural History

[2] In the 1950s, the City and the County formed the Building Authority to issue bonds in order to finance a City-County Building. Between 1991 and 1992, the City and County agreed that the Building Authority would again issue bonds in order to finance the construction of the Center, which would be joined to the City-County Building. An inter-local agreement provided that the Building Authority would own the Center and the County would lease it pursuant to the terms of the 1992 Lease entered into by the County and the Building Authority. The inter-local agreement also stated that the City would sublease space in the Center from the County. The County would finance the 1992 Lease payments using Economic Development Income Tax ("EDIT") revenues allocated from both the County's and the City's share of said revenues.

[3] On September 3, 1992, the County and the Building Authority executed the 1992 Lease. The 1992 Lease was for a term of fifteen years, beginning in September of 1993 when the Center was ready for partial occupancy by the City

---

[1] We held oral argument in this case on April 24, 2019, at the Indiana State House in Indianapolis. We wish to commend counsel for the high quality of their arguments.

police and County sheriff's departments. The 1992 Lease terms included a turn-over provision ("the Turn-Over Provision") which provided that

> [i]n the event [the County] has not exercised its option to purchase the [Center] in accordance with Section 9 hereof and has not exercised its option to renew this Lease in accordance with Section 10 hereof, then, upon expiration of this Lease and upon full performance by [the County] of its obligations under this Lease, the [Center] shall become the absolute property of [the County], and, upon [the County's] request, [the Building Authority] shall execute proper instruments conveying to [the County] all of [the Building Authority's] title thereto.

Appellant's App. Vol. III p. 16–17. The 1992 Lease also included a statutory application provision ("the Statutory Application Provision") which provided that

> [the Building Authority] was organized for the purpose of constructing and erecting the City County Building and leasing the same to [the County] under the provisions of the Indiana Code 36-9-13. All provisions herein contained shall be construed in accordance with the provisions of said Chapter, and to the extent of inconsistencies, if any, between the covenants and agreements in this Lease and provisions of said Chapter, the provisions of said Chapter shall be deemed to be controlling and binding upon [the Building Authority] and [the County].

*Id.* at 18.

[4] After the 1992 Lease expired in September of 2008, the City and the County continued occupying the Center, splitting the operational costs according to the amount of space each occupied. In 2015, the County began negotiating a multi-

million-dollar renovation of the Center with the Building Authority. By 2018, the County requested that the Building Authority transfer title of the Center to the County pursuant to the Turn-Over Provision.

[5] After the Building Authority declined to transfer title, the County filed suit on April 27, 2018, seeking, *inter alia*, declaratory judgment and specific performance.[2] The County also moved to expedite the proceedings, which motion was granted. On May 18, 2018, the trial court granted the City's motion to intervene. On June 15, 2018, a bench trial was held to resolve all claims, counterclaims, and defenses regarding the County's request for declaratory judgment and specific performance. On June 19, 2018, the trial court entered declaratory judgment in favor of the County, concluding that the Turn-Over Provision in the 1992 Lease was valid pursuant to Indiana Code section 36-9-13-22(a)(6), making the Center the property of the County. The trial court also ordered that title of the Center be divested from the Building Authority and vested in the County pursuant to Indiana Trial Rule 70.

# Discussion and Decision

[6] The City contends that the trial court erroneously entered declaratory judgment in favor of the County and ordered title of the Center be divested from the Building Authority and vested in the County pursuant to Indiana Trial Rule 70.

---

[2] The County also sought attorneys' fees, costs, and damages which were bifurcated from this current matter and not included in the trial court's Indiana Trial Rule 54(B) final judgment.

"[D]eclaratory orders, judgments and decrees have the force and effect of final judgments and are reviewed as any other order, judgment and decree." *Ind. Farmers Mut. Ins. Co. v. Ellison*, 679 N.E.2d 1378, 1380 (Ind. Ct. App. 1997), *trans. denied*. When a trial court, as it did here, enters judgment without making specific findings of fact, we may affirm that general judgment on any theory supported by the evidence admitted at trial. *DeKalb Chiropractic Center, Inc. v. Bio-Testing Innovation, Inc.*, 678 N.E.2d 412, 414 (Ind. Ct. App. 1997). We will not reweigh evidence or judge the credibility of witnesses. *Id.* "We consider the evidence most favorable to the appellee and will reverse only if the evidence entitles the appellant to a finding in his favor as a matter of law." *Id.* "We review matters of statutory interpretation *de novo* because they present pure questions of law." *Nicoson v. State*, 938 N.E.2d 660, 663 (Ind. 2010).

# I. Turn-Over Provision

## A. Indiana Code Chapter 36-9-13

The City contends that the trial court erroneously interpreted Indiana Code section 36-9-13-22(a)(6) to permit the Building Authority to agree to the Turn-Over Provision. Our goal in construing a statute is to determine and give effect to legislative intent. *AlliedSignal, Inc. v. Ott*, 785 N.E.2d 1068, 1078 (Ind. 2003). "To give effect to the legislature's intent, we do not consider a statutory provision in isolation but rather consider the statute as a whole and interpret an individual provision so as to harmonize it with other sections of the enactment." *Id.* "Where statutory provisions are in conflict, no part of a statute should be rendered meaningless but should be reconciled with the rest of the

statute." *Id.* at 1079 (quoting *Robinson v. Wroblewski*, 704 N.E.2d 467, 474 (Ind. 1998)). "We generally presume that all statutory language is used intentionally, so that, [e]ach word should be given effect and meaning where possible and not treated as mere surplusage." *In re Howell*, 27 N.E.3d 723, 726 (Ind. 2015) (internal quotations and citations omitted). Indiana Code section 36-9-13-22(a)(6) dictates that "the board of directors of a building authority, acting in the name of the authority, may acquire real or personal property by gift, devise, or bequest and hold, use, or dispose of *that* property for the purposes authorized by this chapter[.]" (emphasis added).

[8]  We conclude that Indiana Code chapter 36-9-13, specifically Indiana Code section 36-9-13-22(a)(6), does not permit the Building Authority to agree to the Turn-Over Provision in the 1992 Lease. We interpret Indiana Code section 36-9-13-22(a)(6) to permit building authorities to hold, use, or dispose only of real or personal property that it acquired by gift, devise, or bequest. We emphasize that the General Assembly's use of the word "that" in the statute refers to property acquired by gift, devise, or bequest.

[9]  The County argues that the General Assembly's use of "that" should be interpreted to refer to any real or personal property that is acquired by a building authority regardless of how it was acquired. This argument fails for multiple reasons. First, the County's interpretation would make the use of the words "gift, devise, or bequest" mere surplusage, which we presume was not the General Assembly's intent. *See In re Howell*, 27 N.E.3d at 726. Moreover, if Indiana Code section 36-9-13-22(a)(6) permitted building authorities to dispose

of any real or personal property regardless of the way in which it was acquired, as the County suggests, it would render the other dispositional powers granted to building authorities in Indiana Code chapter 36-9-13 irrelevant. *See* Ind. Code § 36-9-13-25 (disposition through options to purchase); *see also* Ind. Code § 36-9-13-41 (disposition through dissolution). Therefore, because it is undisputed that the Center was not acquired by gift, devise, or bequest, the Building Authority lacked the statutory authority to agree to the Turn-Over Provision.

## B. Indiana Code Chapter 36-1-11

[10] The County also argues that even if the Building Authority did not have the authority to agree to the Turn-Over Provision pursuant to Indiana Code chapter 36-9-13, it did pursuant to Indiana Code chapter 36-1-11, which governs a governmental entity's authority to dispose of real property.

> There is a strong presumption that the legislature in enacting a particular piece of legislation is aware of existing statutes on the same subject…[W]here one statute deals with a subject in general terms and another statute deals with a part of the same subject in a more specific manner, then the two should be harmonized, if possible; but if they are in irreconcilable conflict then the more detailed will prevail as to the subject matter it covers.

*Ind. Alcoholic Beverage Comm'n v. Osco Drug, Inc.*, 431 N.E.2d 823, 833 (Ind. Ct. App. 1982). Because a building authority is also a governmental entity, the County points to Indiana Code section 36-1-11-8 as authorization for the Building Authority to agree to the Turn-Over Provision. Indiana Code section 36-1-11-8 dictates that

[a] transfer or exchange of property may be made with a governmental entity upon terms and conditions agreed upon by the entities as evidenced by adoption of a substantially identical resolution by each entity. Such a transfer may be made for any amount of real property, cash, or other personal property, as agreed upon by the entities.

[11] We conclude that Indiana Code chapter 36-9-13 and Indiana Code chapter 36-1-11 are in irreconcilable conflict in regards to the dispositional powers of building authorities; thus, the more specific chapter, Indiana Code chapter 36-9-13, must prevail. Indiana Code chapter 36-9-13 specifically details the authority of building authorities whereas Indiana Code chapter 36-1-11 deals more generally with governmental entities. If the general dispositional authority outlined in Indiana Code chapter 36-1-11 is held to be controlling, it would leave the dispositional powers outlined specifically for building authorities in Indiana Code chapter 36-9-13 superfluous, which would be contrary to precedent. *See Althaus v. Evansville Courier Co.*, 615 N.E.2d 441, 444 (Ind. Ct. App. 1993) (finding where two statutes dealing with the same subject matter are irreconcilably conflicting, the more detailed statute prevails over the general statute). Moreover, both the Building Authority and the County agreed to the Statutory Application Provision in the 1992 Lease which mandated that Indiana Code chapter 36-9-13 would govern the terms of said lease. We construe the 1992 Lease as any other contract, which by its clear and unambiguous terms binds the County to the Statutory Application Provision for which it bargained. *See Whiteco Indus., Inc. v. Nickolick*, 571 N.E.2d 1337, 1339 (Ind. Ct. App. 1991) ("A lease is to be construed as any other contract…Where

no defect is claimed to have occurred during formation of the contract, its terms, if unambiguous, are conclusive on the question of the intentions of the parties."). In summary, we conclude that the County has failed to establish that the Building Authority had any statutory authority to agree to the Turn-Over Provision.

# II. Purchase Option

[12] That said, we choose not to ignore the fact that the County, as a holdover tenant, may still acquire title to the Center by exercising its purchase option in the 1992 Lease.

> When a lessee under a lease for a definite term holds over after the expiration of that term, the lessor has the option of treating the lessee as a tenant or a trespasser. In the absence of an agreement to the contrary, when a tenant holds over beyond the expiration of the lease and continues to make rental payments, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy under the terms of the expired lease. When the original lease was for more than one year, the renewal lease is for a year at a time.

*Houston v. Booher*, 647 N.E.2d 16, 19 (Ind. Ct. App. 1995) (internal citations omitted).

[13] The 1992 Lease expired in September of 2008, and thereafter the status quo was maintained. Neither party claims that at any time since the expiration of the 1992 Lease has the Building Authority attempted to evict the County. Rather, the County has continued to occupy its share of the Center and pay its share of

the operational costs for approximately a decade. Because the County held over beyond the expiration of the 1992 Lease, both the Building Authority and the County have continued the tenancy under the terms of the 1992 Lease, which includes the purchase option. The purchase option states that

> [the Building Authority] hereby grants to [the County] the right and option, on any rental payment date prior to the expiration of this Lease, upon written notice to [the Building Authority], to purchase the [Center] at a price equal to the amount required to enable [the Building Authority] to liquidate by paying all indebtedness, including the Bonds, with accrued and unpaid interest to the first date on which such indebtedness may be redeemed and all premiums payable on the redemption thereof, and by paying the expenses and charges of liquidation and the cost of transferring the [Center].

Appellant's App. Vol. III p. 37. Therefore, while we remand this matter to the trial court so that it can vacate its order granting title to the Center in the County, the County may still exercise its purchase option pursuant to the 1992 Lease.

# Conclusion

[14] Because Indiana Code chapter 36-9-13 controlled the terms of the 1992 Lease, the Building Authority lacked the statutory authority to agree to the Turn-Over Provision, making it void. We therefore remand with instructions to vacate the order granting title to the Center in the County. Since the expiration of the 1992 Lease, the County has continued occupying the Center as a holdover tenant which means both the Building Authority and the County are deemed to have

continued the tenancy under the terms of said lease. Therefore, the County has the option to purchase the Center pursuant to the purchase option in section nine of the 1992 Lease.

[15] The judgment of the trial court is reversed and remanded with instructions for further proceedings consistent with this opinion.

Bailey, J., concurs.

Brown, J., concurs in part and dissents in part with opinion.

| | |
|---|---|
| City of New Albany, | Court of Appeals Case No. 18A-MI-1627 |
| *Appellant-Intervenor/Counterclaimant*, | |
| v. | |
| Board of Commissioners of the County of Floyd, | |
| *Appellee-Plaintiff/Counterclaim Defendant*, | |
| New Albany Floyd County Indiana Building Authority, | |
| *Appellee-Defendant/Cross-Claim Defendant*. | |

**Brown, Judge, concurring in part and dissenting in part.**

[16] I concur with the majority's conclusion in Part II that the County may still exercise its option to purchase the Center pursuant to the 1992 Lease. However, I respectfully disagree with Part I of the opinion, do not find Ind. Code §§ 36-9-13-22(a)(6) and 36-1-11-8 to be in irreconcilable conflict, and would find that in this instance the County should be able to rely on the authority granted in Ind. Code § 36-1-11-8. Further, Ind. Code § 36-1-11-8

contemplates a transfer or exchange of property made specifically to "a governmental entity," a condition which is not present in Ind. Code § 36-9-13-22(a)(6).

[17]   For these reasons I respectfully concur in part and dissent in part.