# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 22 2015, 10:07 am

*Kevin S. Smith*

**CLERK**
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT

J. Lamont Harris
Henthorn, Harris & Weliever
Crawfordsville, Indiana

ATTORNEY FOR APPELLEE

Jill Wesch
Wallace Law Firm
Indianapolis, Indiana

IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| Switzer Farms,<br><br>*Appellant-CrossAppellee-Plaintiff,*<br><br>v.<br><br>Sylvia Switzer, as Trustee of the Frank E. Switzer Revocable Trust,<br><br>*Appellee-CrossAppellant-Defendant.* | April 22, 2015<br><br>Court of Appeals Cause No. 86A04-1406-PL-292<br><br>Appeal from the Warren Circuit Court; The Honorable Harry A. Siamas, Special Judge; 86C01-1302-PL-32 |

**May, Judge.**

[1] Switzer Farms sought a declaratory judgment that it had leasehold rights to farmland owned by the Frank E. Switzer Revocable Trust ("the Trust") and damages reflecting the amount of money it could have earned had it leased the land. The trial court entered judgment for the Trust. As Switzer Farms had a right to continue leasing the land and did not forfeit that right by failing to negotiate a new rental amount, we reverse and remand.

## Facts and Procedural History

[2] For some years, Switzer Farms and its predecessors farmed land owned by the Trust and its predecessors. The parties had an oral lease pursuant to which Switzer Farms would farm the Trust's land for one calendar year with cash rent paid the January following the lease year at a price negotiated in January of the lease year. On October, 17, 2012, the Trust's attorney sent Switzer Farms a letter with the heading *TERMINATION OF FARM TENANCY*, (Ex. Vol. at 29), informing Switzer Farms the farm lease "is hereby terminated as of October 31, 2012. . . . If you want to be considered as a possible tenant . . . please so advise me." (*Id.*)

[3] Switzer Farms did not ask to be considered as a possible tenant, but counsel for Switzer Farms sent the Trust a letter a week later indicating Switzer Farms expected to remain the tenant "for the 2013 calendar year," (*id.* at 51), and that as a year-to-year tenant it was to be provided with notice of termination at least three months before the end of the year. The Trust's counsel responded with a letter saying "[t]he sole and only issue is the 'end of the lease year.' You

assume it to be December 31st, but you cite no authority for that proposition." (*Id*. at 52.) The Trust's counsel asserted the lease term was instead for the year commencing March 1. The letter went on to say the Trust, in "the spirit of settlement," would "consider a reasonable proposal . . . to let [Switzer Farms] farm for the 2013 crop year. We have procured an appraisal which states that the fair rental value would be $350 per acre." (*Id*.) The rent for 2011 and 2012 had been $180 per acre.

[4] Switzer Farms did not respond to that letter and on December 31, 2012, the Trust rented the land to someone else.

## Discussion and Decision

[5] Because the trial court, *sua sponte*, entered specific findings of fact and conclusions of law, the specific findings control only with respect to the issues they cover and the general judgment will control as to the issues on which the court has not found. *Catellier v. Depco, Inc.*, 696 N.E.2d 75, 77 (Ind. Ct. App. 1998). We may not reverse the trial court's findings unless they are clearly erroneous. *Id*. We will affirm the general judgment if it can be sustained on any legal theory by the evidence introduced at trial. *Id*. In our review, we will consider only the evidence most favorable to the trial court's judgment and will not weigh the evidence or judge the credibility of witnesses. *Id*.

[6] Switzer Farms is correct that there was not timely notice of the termination of the tenancy. A tenancy from year to year may be determined by a notice given to the tenant not less than three months before the expiration of the year. Ind.

Code § 32-31-1-3. The purpose of a notice to terminate a tenancy is to reasonably inform the tenant that the tenancy will not be renewed for an additional year and will terminate at the end of its current term. *Gardner v. Prochno*, 963 N.E.2d 620, 625 (Ind. Ct. App. 2012). Written notice is required to terminate a year-to-year tenancy. *Id*. at 624. The Trust's written notice was due before October 1, 2012, but it was not provided to Switzer Farms until October 17.

[7] In the absence of an agreement to the contrary, when a tenant holds over beyond the expiration of the lease and continues to make rental payments, and the lessor does not treat the tenant as a trespasser by evicting him, the parties are deemed to have continued the tenancy *under the terms of the expired lease*. *Houston v. Booher*, 647 N.E.2d 16, 19 (Ind. Ct. App. 1995). When the original lease was for more than one year, the renewal lease is for a year at a time. *Id*.

[8] In *Gardner*, Prochno, the tenant, did not receive written notice to terminate his year-to-year tenancy within three months of the start date for his farm lease. We determined Ind. Code chapter 32-31-1 requires *written* notice to terminate a year-to-year tenancy "not less than three (3) months before the expiration of the year," and accordingly affirmed summary judgment for Prochno. 963 N.E.2d at 625.

Prochno rented 480 acres of farm ground on a year-to-year farm lease.[1] On April 11, 2010, Prochno received timely a Notice to Terminate Tenancy for 240 of the 480 acres "at the expiration of the current year of 2010." *Id*. at 621. He informed the landlord he intended to farm the remainder of the property for which no notice was given. On January 27, 2011, the landlord sent "an amended notice to terminate the tenancy for the 240 acres that were omitted from the original notice to terminate." *Id*. at 621-22. Prochno sought a declaratory judgment that he had a binding and enforceable contract to farm the land that was omitted from the original notice terminating his tenancy because he received timely written notice for half of the acreage but not for the other half. The trial court granted Prochno summary judgment, finding the notice given in January 2011 was untimely as to the 2011 growing season, and we affirmed.

In the case before us the trial court correctly found the parties' lease was for the calendar year and the Trust did not provide notice until October 17, 2012 that it was terminating the lease. That notice therefore was not timely.[2] The trial

---

[1] We noted the "custom and practice of farm communities in Marshall County is that a farm lease is a year-to-year tenancy that is deemed to commence on March 1 of each year." *Gardner v. Prochno*, 963 N.E.2d 620, 621 (Ind. Ct. App. 2012). As explained below, Switzer Farms' lease was for the calendar year.

[2] The Trust argues on cross-appeal the trial court erred in finding the oral lease was for the term from January 1 to December 31, and it should have instead found the lease was for a "crop year," March 1 to February 28. (Appellee-Cross-Appellant's Br. at 13.) The Trust points to evidence the lease was for the "crop year," and that other leases in the area, including some of the Farm's other leases, were for March to February terms. But there was also evidence before the trial court that the rent was paid to the Trust in January "for the preceding year," (Tr. at 135), meaning "[t]he previous calendar year." (*Id*. at 136.) There was evidence before the trial court to permit its finding the lease was for the calendar year, and we may not reweigh it on appeal.

court accordingly determined "Switzer Farms was entitled to cash rent the farm in 2013," (App. at 17), but, it went on to say, "not necessarily at $180 per acre." (*Id*.) It determined "one term of the lease was that the parties would negotiate the cash rent in January of each lease year the Court cannot alter this term and fix the cash rent at $180 per acre." (*Id*. at 18.) The court said if "Switzer Farms attempted to negotiate cash rent for 2013 in January 2013 or before[3] there could be a different result," but it took no steps to do so. (*Id*.) (footnote added).

That was error. Switzer Farms could not have "attempted to negotiate cash rent for 2013 in January of 2013" as the lease provided, because the Trust had already leased the ground to someone else.[4] We agree with Switzer Farms that leasing the ground to someone else amounted to an anticipatory breach of the lease by the Trust.

A party to a contract may be excused from tendering performance if the other party has already repudiated. *Eden United, Inc. v. Short*, 573 N.E.2d 920, 929 (Ind. Ct. App. 1991), *reh'g denied, trans. denied*. Repudiation of a contract must be positive, absolute, and unconditional in order that it may be treated as an

---

[3] The trial court explicitly found the lease agreement was that the land would be leased "at a price negotiated between landlord and tenant *in January of the lease year*." (App. at 17.) We decline to hold Switzer Farms lost its right to lease the land at $180 per acre solely because it did not attempt to negotiate on a date *before* the oral agreement provided it could.

[4] The Trust notes its lease with the new tenant included a provision "allowing the Trust to cancel the new lease if Switzer Farms was adjudicated to continue to possess lease rights under the Oral Lease." (Appellee/Cross-Appellant's Br. at 6.) The Trust does not direct us to anything in the record suggesting Switzer Farms was aware of any such provision.

anticipatory breach. *Id.* Demanding performance to which the party has no right under the contract amounts to an anticipatory breach. *Id.*

[13] The Trust repudiated the oral lease when it leased the land to someone else before the date when the oral agreement provided the Trust and Switzer Farms would negotiate the rent for the coming year.

[14] In *Bennett v. Broderick*, 858 N.E.2d 1044, 1046 (Ind. Ct. App. 2006), *trans. denied*, Bennett and Broderick executed a residential lease agreement for Broderick's rental property. Bennett was to provide a $900 security deposit. Bennett gave Broderick a check Bennett intended to cover the deposit and the first months' rent. Broderick later noticed the check was postdated. Broderick took the check to her bank, where a teller told her the check could not be accepted, deposited, or cashed because it was postdated.

[15] On June 25, 2005, Broderick wrote Bennett and returned the postdated check. She reminded Bennett the security deposit was due when he signed the lease, and she asked him to inform her by July 1, 2005, whether he intended to pay the security deposit. The letter indicated if Bennett did not respond she would consider it a refusal to pay and would consider the agreement void. Bennett received Broderick's letter on July 21, 2005, when he returned from vacation. When he inquired about the status of the lease, Broderick told him she no longer considered the lease to be valid.

[16] Bennett sued Broderick to recover costs he incurred in finding another residence. The trial court entered judgment for Broderick, but we reversed,

finding Broderick repudiated the lease. After Broderick received no reply to her letter to Bennett by July 1, she said she assumed Bennett was not interested in renting the property, and "the reason she called [the lease] off was because [she] didn't get [the] security deposit[.]" *Id.* at 1051. We determined Broderick received the security deposit when she accepted Bennett's check. *Id.* "The check was a negotiable instrument, which Broderick did not negotiate." *Id.* As the parties had a binding contract, which Broderick repudiated, Broderick breached the lease when she terminated the lease and refused without legal justification[5] to rent the property to Bennett. *Id.*

[17]  Similarly, in the case before us, the Trust repudiated the oral lease with Switzer Farms when it purported to terminate the lease without timely written notice, then leased the land to someone else before the date when Switzer Farms could have had the opportunity, pursuant to the terms of the agreement, to negotiate the rent for the following year. Because of the Trust's anticipatory breach in the form of its repudiation of the lease before Switzer Farms' performance was due, Switzer Farms was excused from any requirement that it negotiate the following year's rent.

[18]  In Indiana, an anticipatory breach of a contract excuses the other party from further performance, permits the other party to treat the contract as terminated,

---

[5] We determined Broderick "had no right to rely on the opinion of a teller employed by the depositary bank that Bennett's check would not be honored by his bank, the payor bank. Thus, Broderick's repudiation of the lease in late July was a breach of the lease." *Bennett v. Broderick*, 858 N.E.2d 1044, 1051 (Ind. Ct. App. 2006).

and allows the other party to immediately sue for damages. *Page Two, Inc. v. P.C. Mgmt., Inc.*, 517 N.E.2d 103, 107 n.2 (Ind. Ct. App. 1987). As Switzer Farms was entitled to continue farming the land pursuant to the terms of its lease with the Trust, we must reverse the trial court's judgment and remand for a determination of Switzer Farms' damages.

[19] Reversed and remanded.

Barnes, J., and Pyle, J., concur.